**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Gilberto Miranda, et al., | Case No.: 2:23-cv-01780-JAD-DJA |
| Plaintiffs | **Order Denying Cross Motions for Summary Judgment but Dismissing Claims of Miranda and Terry** |
| v. | |
| State Farm General Insurance Company and State Farm Fire & Casualty Company, | [ECF Nos. 24, 25] |
| Defendants | |

Future Science Technology Inc. (FST) conducted a medical study to determine the efficacy of an over-the-counter medication on delayed-onset muscle soreness in the days following 60 participants' short-duration, high-intensity physical exercise. Within 72 hours of the study's start, however, four of the participants ended up in the hospital with a blood condition called rhabdomyolysis, which causes a breakdown of muscle tissue. Those participants sued FST for their injuries in Nevada state court, and FST tendered the claim to its insurer, State Farm, who denied coverage. That state-court action concluded with a stipulated money judgment and FST's assignment of its rights against State Farm.

Standing in FST's shoes, the four participants now sue State Farm for breach of the insurance contract, seeking payment of the judgment. They move for partial summary judgment, contending that State Farm's policy covers the bodily injury they suffered so State Farm's denial was a breach as a matter of law. State Farm crossmoves for summary judgment. It argues that the participants' damages do not arise from an accidental occurrence, as required by the policy and, regardless, the loss is expressly excluded by the policy's professional-services and intentional-acts exclusions. It also moves to dismiss the claims of two of the plaintiffs—Gilberto

Miranda and Chad Terry—for their failure to participate in this litigation in violation of a court order compelling discovery.

Although I find that this incident is a covered occurrence under the policy, a genuine dispute of material fact exists over whether the intentional-acts exclusion bars coverage for the participants' losses, so I deny both summary-judgment motions.  But because Miranda and Terry have failed to participate in this litigation, prejudicing State Farm's ability to defend against their allegations, I grant State Farm's request to dismiss their claims.  So this case proceeds to trial on the claims of Bonnie Lo and Chad Moffit only.  But first I refer it to the magistrate judge for a mandatory settlement conference.

## Background

Future Sciences Technology Inc., a now-defunct medical-research enterprise, conducted clinical-research studies at Touro University in Henderson, Nevada.[1]  One of those studies focused on the efficacy of over-the-counter medication on delayed-onset muscle soreness (DOMS).[2]  The study's 60 participants were instructed to perform squats to induce DOMS.[3]  Once DOMS symptoms appeared, the researchers gathered data on the efficacy of various treatments.[4]  Within 72 hours of starting the exercise required by the study, four of the participants, Gilberto Miranda, Bonnie Lo, Chad Terry, and Thomas Moffitt, developed and were hospitalized for rhabdomyolysis, a condition that can cause breakdown of muscles, compartment syndrome, renal failure, or even death.[5]

---

[1] ECF No. 28-1 at 4, ¶ 14.

[2] *Id.* at 4, ¶ 12.

[3] *Id.* at 4, ¶ 15.

[4] *Id.* at 4, ¶ 16.

[5] *Id.* at 4–5, ¶¶ 18, 21, 23.

The participants who developed rhabdomyolysis sued FST and its employees in state court, claiming that they were negligent in directing the participants to perform exercises that exceeded their abilities, causing them to incur unexpected medical treatment and costs.[6] FST tendered the claim to its insurer, State Farm, which denied the claim,[7] taking the position that the conduct giving rise to the suit falls outside the scope of FST's commercial-general-liability-insurance coverage.[8]

In state court, the participants obtained a stipulated monetary judgment against FST[9] and an assignment of FST's first-party rights against State Farm for the insurance-coverage claim.[10] Relying on that assignment, the participants sue State Farm for breach of contract, alleging that State Farm had a duty under the insurance policy to defend and indemnify FST, which it breached by "failing to effectuate a prompt, fair, and equitable settlement of the claim; misrepresenting pertinent facts and/or insurance provisions to FST relating to coverage at issue under the terms of the policy; and failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the policy."[11] State Farm removed this coverage case to federal court based on diversity jurisdiction.[12]

The participants now move for summary judgment, contending that "is it clear that" the insurance policy covers the bodily injury they suffered.[13] They argue that, as a matter of law,

---

[6] ECF No. 26-1 at 6–7, ¶¶ 33, 36.

[7] ECF No. 28-1 at 3, 5, ¶¶ 11, 27–30.

[8] *Id.* at 5, ¶¶ 28, 30.

[9] ECF No. 28-2.

[10] ECF No. 26-1 at 5–6, ¶ 32 (cleaned up).

[11] ECF No. 28-1 at 7, ¶ 53.

[12] ECF No 1.

[13] ECF No. 24 at 7.

insurance coverage must be extended by State Farm because all the requirements for insurance coverage are met. They insist that FST is "legally required to pay damages as a result of the stipulated judgments," "the [p]laintiffs' underlying case was based entirely on personal injury," and "no exclusion applies."[14]

State Farm crossmoves for summary judgment.[15] It contends that, while the plaintiffs' hospitalization was an unexpected result of the study, FST intentionally directed the plaintiffs to engage in exercises with the express goal of developing DOMS, and that intentional act caused their injuries.[16] Because the plaintiffs' injuries do not arise from an accidental occurrence, State Farm argues, they are not covered by the FST policy.[17] Even if they were, the loss alleged by the plaintiffs is expressly excluded by the policy terms, State Farm adds.[18] It further argues that the participants have put forward no evidence supporting any claim "under Nevada 'bad faith' insurance law."[19] State Farm also moves to dismiss all claims by Gilberto Miranda and Chad Terry, two plaintiffs that it says have not participated in this litigation at any point, in violation of a court order.[20]

---

[14] *Id.* at 8.

[15] ECF No. 25.

[16] *Id.* at 8.

[17] *Id.*

[18] *Id.* at 15–25.

[19] *Id.* at 25.

[20] *Id.*

**Discussion**

**A.    This case involves only a single claim for breach of contract.**

Before reaching the merits of the parties' arguments, I must clear up what appears to be some confusion about the nature of this case.  State Farm offers pages of argument about the plaintiffs' "bad faith" claim and seeks to dismiss it.[21]  The participants caption their motion as one for "partial" summary judgment on their breach-of-contract claim.[22]  Then, in their response to State Farm's arguments, the participants seem to believe that they have "bad faith" claims.[23]  So before addressing the parties' summary-judgment arguments, I first clarify the claims that have actually been pled.

The participants have pled just one claim for breach of contract, and no others.[24]  The title below is the only one for a cause of action, and it is found on page six of the complaint:[25]

**FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

To the extent that the parties believe there is another claim, they have not shown that one exists.  At most, the complaint contains one conclusory line in the general allegations stating that State Farm violated Nevada Revised Statute (NRS) § 686A.310 and a few paragraphs regurgitating the statute's elements.[26]  But the plaintiffs don't assert a claim on that basis—something they did for the breach-of-contract claim—and don't allege any facts to support such a claim.  Because

---

[21] *Id.* at 25–28.

[22] *See generally* ECF No. 24.

[23] ECF No. 28 at 18.

[24] ECF No. 28-1 at 7.

[25] *Id.*

[26] *Id.* at 6, ¶¶ 37–40.

plaintiffs are "the master[s] of [their] complaint and responsible for articulating cognizable claims,"[27] and they have identified only a single claim for relief in their complaint, any discussion of the application of NRS § 686A.310 or any bad-faith claim would be purely advisory on the part of this court. So I address the merits of the participants' breach-of-contract claim only—the sole claim enumerated in the participants' amended complaint. There is no claim in this case for bad faith or a violation of NRS 686A.310.

**B.    Genuine issues of material fact about whether the coverage denial constitutes a breach of contract precludes complete summary judgment for either side.**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[28] It is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[29] "At [the] summary-judgment stage" in an insurance case, "the insured must provide the existence of any potential for coverage, while the insurer must establish the absence of any such potential."[30]

In Nevada, insurance policies are treated like other contracts, so legal principles that apply to contracts generally apply to insurance policies.[31] "When reading a provision of an insurance policy, the court's interpretation 'must include reference to the entire policy, which

---

[27] *Newtok Village v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021).

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[29] *Id.* at 322.

[30] *Reese v. Travelers Ins. Co.*, 129 F.3d 1056, 1060 (9th Cir. 1997) (cleaned up). This Ninth Circuit decision analyzes California law, but I find it to be an accurate and cogent distillation of the parties' burdens in Nevada, too.

[31] *Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (Nev. 2018) (citations omitted).

will be read as a whole [ ] to give reasonable and harmonious meaning to the entire policy.'"[32]  A breach-of-contract claim in Nevada requires (1) formation of a valid contract, (2) performance or excuse of performance by the plaintiff, (3) material breach by the defendant, and (4) damages as a result of the breach.[33]  Only the third element—whether State Farm's refusal to provide coverage for the participants' judgment is in dispute here.

State Farm contends that the policy does not cover the losses suffered by the plaintiff participants because they did not result from an accident but rather from intentional conduct.[34]  Even if it was an "occurrence," State Farm adds, the policy's professional-services and intentional-acts exclusions eliminate any possibility of coverage.[35]  The participants make the opposite argument in their own summary-judgment motion.[36]  They contend that their injuries were "occurrences" because, although the act of having them perform vigorous exercise was intentional, their rhabdomyolysis was accidental.[37]  And they deny the applicability of any exclusion.[38]

---

[32] *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 497 P.3d 625, 628 (Nev. 2021) (quoting *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (1993)).

[33] *See Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (quoting *Malone v. Univ. of Kansas Med. Ctr.*, 552 P.2d 885, 888 (Kan. 1976)).

[34] ECF No. 25 at 11.

[35] *Id.* at 15–25.

[36] *See* ECF No. 24.

[37] *Id.* at 12.

[38] *Id.* at 8–12.

1

2
3

  **1.**  **_The participants' rhabdomyolysis was an "occurrence" under the policy_**
     **_because, while having them perform vigorous exercise was intentional, this_**
     **_result was accidental._**

4  The policy defines an "occurrence" as "an accident, including continuous or repeated

5 exposure to substantially the same general harmful conditions."[39] State Farm argues that

6 "[w]ithout some form of accident[al] causative event underlying the asserted loss," "there is no

7 covered 'occurrence' under the insurance contract, and coverage does not apply."[40] So the

8 policy's limitation of coverage to "accidents" "must rationally preclude coverage of damage

9 arising from intentional acts undertaken by the insured."[41] And because FST called for study

10 participants to undertake heavy exercise with the intention of causing DOMS, State Farm

11 argues,[42] "the complained-of damages were not the result of an 'accident'" and are outside the

12 scope of the policy's coverage.[43]

13  The participants respond that the complained-of damages were the result of an accident.

14 They argue that FST intended to cause only DOMS, not the harmful medical condition

15 rhabdomyolysis for which they were hospitalized.[44] "There is no question . . . that this causative

16 event was unexpected and accidental," they say, because their injuries "were above and beyond

17 the expected consequences of the process."[45] The crux of their argument is that the event that

18

19 ―――――――――――――

20 [39] ECF No. 28-4 at 47.

  [40] ECF No. 24 at 12.

21 [41] _Id._ at 13.

  [42] _Id._ at 13–14.

22 [43] ECF No. 25 at 12.

23 [44] ECF No. 28 at 11.

  [45] _Id._

caused the injury was intentional, but its consequences were not. So the dispute over whether this event qualifies as an occurrence is not one of fact, but one of law, with State Farm taking the position that the *act causing* the injury must be accidental, and the participants contending that only the *result of that act* must be unintended.

The Nevada Supreme Court's jurisprudence on "accidental" policy language splits into two lines of cases. In *Catania v. State Farm Life Insurance Company, Inc.*, a father sued an insurer seeking to recover accidental-death benefits after his son "choked to death[ ] [as] a result of 'acute narotism' occasioned by a self-administered heroin injection."[46] The life-insurance policy covered only death caused by "accidental means."[47] In determining whether the death triggered that coverage, the Court focused on whether the death itself was intentional. It noted that the son did not intend or expect death to result from his intentional act of injecting heroin and held that when "an insured dies as the result of an intentional or expected act or event, but did not intend or expect death to result, the death is 'accidental' within the contemplation of that term."[48]

The *Catania* scenario is materially distinguishable from that in *Beckwith v. State Farm*,[49] the Nevada Supreme Court case that State Farm relies on to argue that the instant situation is not a covered occurrence because the act that resulted in the harm was intentional.[50] Beckwith was high on drugs and hallucinating when he struck his neighbor in the face, rupturing his eye.[51] The

---

[46] *Catania v. State Farm Life Ins. Co., Inc.*, 598 P.2d 631, 632 (Nev. 1979).

[47] *Id.*

[48] *Id.* at 633.

[49] *Beckwith v. State Farm Fire & Cas. Co.*, 83 P.3d 275, 277 (Nev. 2004).

[50] ECF No. 25 at 12.

[51] *Beckwith*, 83 P.3d at 276.

neighbor sued, and Beckwith tendered the claim to his homeowner's insurance company, State Farm, which sought a declaration of non-coverage.[52]  Just as it does here, State Farm then took the position that "the incident was not a covered 'occurrence'" because the incident was no accident.[53]  Beckwith and the neighbor argued that the act was not intentional because Beckwith lacked the requisite state of mind: "given [Beckwith's] advanced state of intoxication, he did not intend to injure [his neighbor] and . . . believed he acted in self-defense."[54]  The Nevada Supreme Court found that the incident was "a non-accidental intentional act even if Beckwith did not intend to harm" the neighbor.[55]  It noted its observation in *Mallin v. Farmers Insurance Exchange*[56] when considering "a similarly worded insurance policy" that "intent or intention denotes a design or desire to cause the consequences of one's acts and a belief that given consequences are substantially certain to result from the acts."[57]  And it reasoned that Beckwith's "supposed inability to control his acts was not the same as an inability to intend his acts,"[58] so his attack "was not an occurrence under the insurance policy."[59]

*Beckwith* merely reinforces the *Mallin* notion that an incident isn't accidental under such policies if its consequences were substantially certain to result from an intended act.  So when a molestation victim relied on *Catania* to claim coverage under a homeowner's policy with a

---

[52] *Id.*

[53] *Id.*

[54] *Id.* at 277.

[55] *Id.*

[56] *Mallin v. Farmers Ins. Exch.*, 797 P.2d 978, 979 (1990), *overruled on other grounds by Matter Est. of Sarge*, 432 P.3d 718 (2018).

[57] *Beckwith*, 83 P.3d at 277 (quoting *Mallin v. Farmers Ins. Exch.*, 839 P.2d 105, 106 (Nev. 1992)).

[58] *Id.* (quoting *Mallin*, 839 P.2d at 107).

[59] *Id.*

1    similar "occurrence" definition in *State Farm Fire & Casualty Co. v. Smith*, the Ninth Circuit

2    rejected that effort.[60]  The victim sought damages for emotional and psychological harm caused

3    by her step-father's sexual abuse and argued that, because he claimed that he never intended for

4    his conduct to harm the child, the occurrence was accidental.[61]  "There is a crucial distinction

5    between *Catania* and this case," the panel explained.[62]  "The policyholder in *Catania* injected

6    heroin; a dangerous and unwise act to be sure, but not one that normally—far less, inevitably—

7    results in immediate death.  Thus, the Nevada Supreme Court, while recognizing that the

8    injection itself was deliberate, chose to characterize the death caused by the injection as the result

9    of 'mishap, mischance or misjudgment.'"[63]  But the step-father's act of molestation was "not the

10   kind of act [that] results in emotional and psychological harm only occasionally; Nevada law

11   conclusively presumes that such conduct will be harmful in every case and therefore makes it

12   illegal."[64]  "Consequently, . . . one cannot intend the act of molestation without also intending the

13   harm."[65]

14        The instant case is more *Catania* than *Beckwith*.  Like the death from heroin use in

15   *Catania*, the rhabdomyolysis was an accidental result of an intentional act.  The goal of the FTS

16   study was to evaluate recovery from DOMS and determine the effectiveness of over-the-counter

17   medications in assisting that recovery.  While FST intentionally had the study participants

18   engage in exercises that would cause DOMS, the record shows, and State Farm concedes, these

19

20   ――――――――――――――――
     [60] *State Farm Fire & Cas. Co. v. Smith*, 907 F.2d 900, 903 (9th Cir. 1990).

21   [61] *Id.* at 902.

     [62] *Id.*

22   [63] *Id.* (quoting *Catania*, 598 P.2d at 632).

23   [64] *Id.*

     [65] *Id.*

1  four participants suffered "extreme results" that "exceeded the level of injury/damage

2  contemplated by the FST study."[66]  State Farm states in its own motion for summary judgment

3  that it "concede[s] that there clearly exists an accident[al] *result*: There is no indication that FST

4  or its principals actually intended for any of their test subjects to require hospitalization."[67]  In

5  short, although the FST researchers intended to cause the participants to experience DOMS, like

6  the death from heroin use in *Catania*, the harm of rhabdomyolysis was precisely the kind of

7  harm that results only occasionally.  So the rhabdomyolysis was "accidental" and thus a covered

8  occurrence under FTS's State Farm policy.

9        This conclusion is consistent with the Ninth Circuit's analysis of policy language

10  identical to FST's in *Anthem Electronics, Inc. v. Pacific Employers Insurance Company*.[68]  That

11  policy defined an occurrence as "an accident, including continuous or repeated exposure to

12  substantially the same general harmful conditions which result in bodily injury or property

13  damage."[69]  "The operative word," the court, noted, "is *accident*,"[70] so "at bottom an occurrence

14  is simply an unexpected consequence of an insured's act, even if due to negligence or faulty

15  work."[71]  The court observed that, in this context, "accidents need not crash or clatter; they need

16  only be unexpected consequences, and they may result even from the insured's own

17  negligence."[72]  "Put another way, 'when the injury or property damage is an unexpected or

18

19  ───────────────

[66] ECF No. 25 at 8.

20  [67] *Id*. at 13.

21  [68] *Anthem Elect., Inc. v. Pacific Emp. Ins. Co*., 302 F.3d 1049 (9th Cir. 2002).

    [69] *Id*. at 1053.

22  [70] *Id*. at 1054.

23  [71] *Id*.

    [72] *Id*. at 1055.

1   unintended consequence of the insured's conduct, it may be characterized as an accident for

2   which coverage exists.'"[73]  Here, the injury—the rhabdomyolysis—was an unexpected or

3   unintended consequence, so it may be characterized as an accident covered by the FTS policy.  I

4   therefore find that the participants' injury was "accidental" and thus a covered occurrence under

5   the policy.

6          **2.    *The professional-services exclusion does not apply.***

7          State Farm argues that, even if the participants' injury was an occurrence under the

8   policy, it is explicitly excluded by the professional-services exclusion,[74] which excludes

9   coverage for "bodily injury" "arising out of the rendering or failure to render any professional

10  service or treatment."[75]  The policy provides a non-exhaustive list of qualifying professional

11  services:

12        a.    Legal, accounting or advertising services;
          b.    Preparing, approving, or failing to prepare or approve maps, shop
13              drawings, opinions, reports, surveys, field orders, change orders or
                drawings and specifications;
14        c.    Supervisory, inspection, architectural or engineering activities;
          d.    Treatment, advice or instruction of any medical, surgical, dental, x-ray or
15              nursing services;
          e.    Treatment, advice or instruction of any health or therapeutic services;
16        f.    Any service, treatment, advice or instruction for the purpose of appearance
                or skin enhancement, hair removal or replacement or personal grooming;
17        g.    Optometry or optical or hearing aid services including the prescribing,
                preparation, fitting, demonstration or distribution of ophthalmic lenses and
18              similar products or hearing aid devices;
          h.    Body piercing services;
19        i.    Services in connection with the practice of pharmacy;
          j.    Handling, embalming, disposal, burial, cremation or disinterment of dead
20              bodies; and
          k.    Veterinary services or treatments.[76]

21  ─────────────────────

    [73] *Id.* (quoting *Chu v. Canadian Indem. Co.*, 224 Cal. App.3d 86, 96 (Cal. Ct. App. 1990)).
22
    [74] *Id.* at 15.
23
    [75] *Id.* at 17.

    [76] ECF No. 28-4 at 38.

Neither side claims that the research study fits squarely within any of these illustrative categories. State Farm contends that the participants' losses fit within this exclusion because "the activities of FST and its principals clearly involved specialized skills and exercises of professional discretion," and the study had "the express purpose of medical research."[77] The participants focus instead on the fact that the study did not provide them any professional services or treatment.[78] Unlike the eleven categories of professional services enumerated in the policy, they say, this study was not for the participants' benefit but for "examination and knowledge purposes."[79]

If an insurer wants to exclude coverage under a policy in Nevada it must "(1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding cover[age] under the exclusion is the only interpretation of the exclusion that could fairly be made, and (3) establish that the exclusion clearly applies to this particular case."[80] And courts must "narrowly construe any clauses that exclude coverage."[81] State Farm falls far short of making this showing. The act of performing a research study is not listed in the professional-services exclusion, and it doesn't fit—even poorly—into any of the categories of activities that are. As the participants point out, all of the categories identified in the exclusion are services

---

[77] ECF No. 25 at 20.

[78] ECF No. 28 at 15.

[79] *Id.*

[80] *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 674 (Nev. 2011).

[81] *Deutsche Bank Nat'l Tr. Co. v. Fidelity Nat'l Title Ins. Co.*, 536 P.3d 915, 922 (Nev. 2023).

provided to another person.[82]  But the participants in this study were not having a service

provided to them.  So I find that the professional-services exclusion does not apply in this case.

### 3.    *A genuine dispute of material fact exists over whether the intentional-acts exclusion applies.*

As its final coverage argument, State Farm contends that coverage is barred by the

policy's intentional-acts exclusion.[83]  This exclusion reads that "insurance does not apply to . . .

'[b]odily injury' or 'property damage expected or intended to cause harm as would be expected

by a reasonable person.'"[84]  State Farm contends that a plain reading of this provision excludes

coverage for the participants' injuries because "FST intentionally inflicted physical harm on the

[ ] test subjects in order to study their rate of recovery."[85]  The participants respond that the type

of injury they suffered "would not be expected by a reasonable person" and thus would not fall

under this intentional-acts exclusion.[86]

The Nevada Supreme Court has repeatedly upheld the enforceability of intentional-acts

exclusions in insurance policies.[87]  When upholding these exclusions, it has held that Nevada

courts must not "rewrite unambiguous insurance-policy provisions or attempt to increase the

---

[82] *See* ECF No. 24 at 10.

[83] ECF No. 25 at 15.

[84] ECF No. 28-4 at 35 (emphasis added).

[85] ECF No. 25 at 16 (cleaned up).

[86] ECF No. 28 at 13.

[87] *See, e.g.*, *Fire Ins. Exch. v. Cornell*, 90 P.3d 978 (Nev. 2004); *Mallin v. Farmers Ins. Exch.*, 839 P.2d 105 (Nev. 1992); *Morrison v. Fire Ins. Exch.*, 2013 WL 3936895 (Nev. 2013).

1    parties' legal obligations where the parties intentionally limited such obligations."[88]  And had
2    State Farm excluded all "bodily injury," this provision would preclude coverage here.

3         But this exclusion contains a squishy modifier.  It excludes "bodily injury expected or
4    intended to cause harm as would be expected *by a reasonable person*."[89]  The qualifier "expected
5    by a reasonable person" makes clear that this intentional-acts exclusion applies only to the type
6    of harm that a reasonable person would conclude was expected or intended.

7         The Nevada Supreme Court has recognized that "if reasonable persons could draw
8    different inferences from the facts, the question is one of fact for the jury and not one of law for
9    the court."[90]  And that's the case here.  Whether "a reasonable person" "would [ ] expect[]" the
10   bodily injury that the participants experienced can be answered two ways on this record.  A
11   reasonable jury could find that rhabdomyolysis was the type of harm "as would be expected by a
12   reasonable person" after they were instructed to engage in short-duration, high-intensity physical
13   exercise designed to achieve DOMS.  But a reasonable jury could also find that the harm the
14   participants suffered would not be expected by a reasonable person, particularly when State Farm
15   concedes that "the harm suffered by the [p]laintiffs . . . was more severe than anticipated by FST
16   and its principals."[91]  Because a reasonable jury could decide this factual issue either way based
17   on this record, summary judgment on the applicability of this exclusion is unavailable to either
18   side.

19

20

---

21   [88] *State Farm Mut. Auto Ins. v. Cramer*, 857 P.2d 751 (Nev. 1993) (cleaned up) (citing *Senteney v. Fire Ins. Exch.*, 707 P.2d 1149, 1150 (Nev. 1985)).

22   [89] ECF No. 28-4 at 35.

23   [90] *Broussard v. Hill*, 682 P.2d 1376, 1377 (Nev. 1984).

     [91] ECF No. 25 at 16–17.

**C.     Because Plaintiffs Gilberto Miranda and Chad Terry have failed to participate in this litigation and the relevant factors favor the dismissal of their claims, their claims are dismissed.**

State Farm also moves to dismiss the claims brought by Gilberto Miranda and Chad Terry based on their failure to participate in this litigation.  It argues that this sanction is appropriate because Miranda and Terry have failed to respond to written discovery requests despite having received warnings that sanctions may be imposed if no responses were provided.[92]  The plaintiffs respond that "dismissal is an overly harsh sanction that should be reserved for only the most extreme circumstances" and that "[l]ess severe alternatives should be considered before resorting to outright dismissal."[93]

District courts have the inherent power to control their dockets and "[i]n the exercise of that power, they may impose sanctions including, where appropriate . . . dismissal" of claims.[94] A court may dismiss an action based on a party's failure to obey a court order or comply with local rules.[95]  In determining whether to dismiss an action on this ground, the court must consider: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives.[96]  "[T]he key factors are prejudice and availability of less drastic sanctions."[97]  In particular, the Ninth

---

[92] *Id.* at 7.

[93] ECF No. 28 at 3.

[94] *Thompson v. Hous. Auth. of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).

[95] *Malone v. U.S. Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

[96] *In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1216 (9th Cir. 2006) (quoting *Malone*, 833 F.2d at 130).

[97] *Hester v. Vision Airlines*, 687 F.3d 1162, 1169 (9th Cir. 2012) (quotation omitted).

Circuit has found that the element of prejudice is essential, and "sanctions [that] interfere with the litigants' claim or defenses violate due process when they are imposed 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'"[98]  To warrant the drastic sanction of claim dismissal, the malfeasance must be due to "willfulness, fault, or bad faith."[99]  But "disobedient conduct [within] the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault."[100]

The first two factors, the public's interest in expeditiously resolving this litigation and the court's interest in managing its docket, weigh in favor of dismissing Miranda and Terry's claims. The third factor, risk of prejudice to defendants, also weighs in favor of dismissal because a presumption of injury arises from the occurrence of unreasonable delay.[101]  State Farm has not received responses from Miranda or Terry though it filed a motion to compel responses to discovery.[102]  And despite written discovery being propounded on all four plaintiffs, their May 3, 2024, deadline has long passed.[103]  As of June 17, 2024, Terry's own counsel has been unable to get in touch with him.[104]  Miranda informed his counsel on June 5, 2024, that he was working on his responses,[105] but no update about these responses has been given to the court.  The fourth

---

[98] *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

[99] *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (internal quotations and citations omitted) (cleaned up); *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003); *Toyrrific v. Karapetian*, 606 F.App'x 365 (9th Cir. 2015) (unpublished).

[100] *Henry v. Gill Inds.*, 983 F.2d 943, 948 (9th Cir. 1993) (internal quotations omitted) (cleaned up).

[101] *See Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1974).

[102] *See* ECF No. 25 at 7.

[103] *See* ECF No. 15 at 3.

[104] *Id.* at 5.

[105] *Id.*

factor—the public policy favoring disposition of cases on their merits—is greatly outweighed by the factors favoring dismissal.

The fifth factor requires the court to consider whether less drastic alternatives can be used to correct the party's failure that brought about the court's need to consider dismissal.[106]  Courts "need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives."[107]  Because Miranda and Terry have not complied with the magistrate judge's August 2024 order compelling their responses to discovery requests or otherwise participated in this action, the only alternative is to enter another order setting a new deadline requiring their compliance.  But the reality of repeating an ignored order is that it often only delays the inevitable and squanders finite resources along the way.  The circumstances here do not indicate that this case will be an exception: there is no hint that Miranda and Terry need additional time or evidence that they did not receive the court's order.  Setting another deadline is not a meaningful alternative given these circumstances.  So the fifth factor favors dismissal. Because these factors favor dismissal of Miranda and Terry's claims, and nothing suggests that they haven't abandoned this litigation, I grant State Farm's motion to dismiss the claims of these two plaintiffs only.

---

[106] *Yourish v. Cal. Amplifier*, 191 F.3d 983, 992 (9th Cir. 1999) (explaining that considering less drastic alternatives before the party has disobeyed a court order does not satisfy this factor); *accord Pagtalunam v. Galaza*, 291 F.3d 639, 643 & n.4 (9th Cir. 2002) (explaining that "the persuasive force of" earlier Ninth Circuit cases that "implicitly accepted pursuit of less drastic alternatives prior to disobedience of the court's order as satisfying this element[,]" i.e., like the "initial granting of leave to amend coupled with the warning of dismissal for failure to comply[,]" have been "eroded" by *Yourish*).

[107] *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986).

### Conclusion

IT IS THEREFORE ORDERED that the parties' motions for summary judgment **[ECF Nos. 24, 25] are DENIED, except as to State Farm's request to dismiss the claims of Plaintiffs Gilberto Miranda and Chad Terry, which is GRANTED**.  So the **claims of Miranda and Terry are DISMISSED with prejudice**, and the **Clerk of Court is directed to TERMINATE them as parties**.

The net result of this order is that this case proceeds on Plaintiffs Bonnie Lo and Thomas Moffitt's breach-of-contract claim.  The question of whether the underlying circumstances constitute an occurrence under the policy (they do) is resolved by this order, as is the inapplicability of the professional-services exclusion.  So the only coverage question remaining for trial is whether the intentional-acts exclusion applies.

IT IS FURTHER ORDERED that this case is **REFERRED to the magistrate judge for a mandatory settlement conference**.  The parties' obligation to file a joint pretrial order is **STAYED until 10 days after that settlement conference**.

_____
U.S. District Judge Jennifer A. Dorsey
June 4, 2025

20